IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| WALTHOUR, et al., | : | CIVIL ACTION |
| | : | |
| Plaintiffs, | : | NO. 09-03660 |
| | : | |
| v. | : | |
| | : | |
| CHILD AND YOUTH SERVICES, et al., | : | |
| | : | |
| Defendants. | : | |


## OPINION


**Slomsky, J.**                                                              **July 14, 2010**

## I.     INTRODUCTION

This civil action arises from child dependency proceedings in the Court of Common Pleas

of Delaware County, Pennsylvania, between Plaintiff Victor Walthour, Sr.[1] and Defendant

---

[1] Based on the exhibits attached to the Amended Complaint, it appears that Rosalyn
Walthour, named as a Plaintiff in this action, has been incapacitated since February 2003 or 2004
and that Plaintiff Victor Walthour, Sr., was her legal guardian for some period of time.  (Amend.
Compl. Ex. "Annual Report of Guardian of the Person.")  Therefore, it is presumed that Mr.
Walthour is attempting to sue on behalf of the incapacitated Mrs. Walthour.

     Pursuant to Federal Rule of Civil Procedure 17(c)(1), a representative may sue on behalf
of an incompetent person if such representative is a "general guardian."  However, in a
subsequent complaint filed by Mr. Walthour in another case before this Court, it appears that Mr.
Walthour's status as a legal guardian for Mrs. Walthour has been revoked by Judge John Herron
of the Philadelphia Court of Common Pleas.  See Walthour v. Herron, No. 10-cv-01495 (E.D.
Pa. Apr. 5, 2010).  The Court may consider matters of public record in deciding a Motion to
Dismiss.  Lum v. Bank of America, 361 F.3d 217, 222 n.3 (3d Cir. 2004).  In light of Mr.
Walthour's Complaint in Walthour v. Herron, which is a matter of public record, Mr. Walthour is
no longer the legal guardian of Mrs. Walthour.  Moreover, although an individual is entitled to
represent himself *pro se*, he may not act as an attorney on behalf of others in federal court.  Lutz
v. Lavelle, 809 F. Supp. 323, 325 (M.D. Pa. 1991); 28 U.S.C. § 1654 ("In all courts of the United

Delaware County Children and Youth Services ("CYS") (improperly captioned as "Child and Youth Services"). The crux of Plaintiff's claim is that the state court proceeding, in which CYS obtained custody of Plaintiff's minor children, impinged on Plaintiff's constitutional rights as a parent.

Before the Court are five (5) Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and/or 12(b)(6).[2] On February 18, 2010, the first Motion to Dismiss (Doc. No. 21) was filed on behalf of six defendants (hereinafter "Judicial Defendants"): the Honorable Joseph P. Cronin, Jr., President Judge of the Court of Common Pleas of Delaware County, Pennsylvania; the Honorable Maureen Fitzpatrick, Michael F.X. Coll, James P. Bradley, and Mary Alice Brennan, Judges of the Court of Common Pleas of Delaware County; and David McNulty, court-appointed master in the Court of Common Pleas of Delaware County. On February 23, 2010, Plaintiff filed a *pro se* response in opposition in the form of a Motion requesting "that defendants request for dismissal on any basis be DENIED" (Doc. No. 24). This response in opposition is one page long; it does not cite to any legal authority; and it does not directly respond to Judicial Defendants' arguments for dismissal.

On March 2, 2010, the second Motion to Dismiss (Doc. No. 28) was filed on behalf of

_____

States the parties may plead and conduct their own cases personally *or* by counsel.") (emphasis added). Finally, the Court notes that there is no evidence that Mrs. Walthour has ever signed any documents indicating her intent to be a Plaintiff in this action. Therefore, for purposes of this Opinion, Mr. Walthour shall be considered the sole Plaintiff in this action.

[2] On March 5, 2010, a Motion to Dismiss (Doc. No. 30) was filed on behalf of Defendant G. Michael Green, Delaware County District Attorney. However, on April 12, 2010, Plaintiff filed a Motion (Doc. No. 45) requesting the voluntary dismissal of Defendant Green. Specifically, the entirety of the Motion states "I ask that G. Michael Green now be removed from case listed above." On April 13, 2010, the Court granted Plaintiff's Motion and dismissed all claims against Defendant Green. (Doc. No. 46.)

sixteen (16) defendants (hereinafter "CYS Defendants"): County of Delaware on behalf of its Children and Youth Services Department; Tamika Clarke, CYS Caseworker; Patricia McGettigan, CYS Caseworker Supervisor; Mary Germond, CYS Administrator; Howard Gallagher, Esquire, Solicitor for CYS; Michael Dignazio, Esquire, Assistant Solicitor for CYS; Barbara Scarlata, Guardian Ad Litem; Colleen Cox, Caseworker Supervisor for CYS; Beverly White, CYS Legal Department Court Representative; Becki Harris, CYS Caseworker; the Honorable John Whelan, County Council; Dorothy Klein, Director of the Delaware County Department of Human Services; the Honorable Andy Lewis, County Council; Linda Cartisano, County Council Chairperson; the Honorable Christine Fizzano Cannon, County Council; and the Honorable Thoms J. McGarrigle, County Council.  On March 15, 2010, Plaintiff filed a *pro se* response in opposition to the CYS Defendants' Motion to Dismiss in the form of a Motion requesting that "any motions to dismiss [be] denied." (Doc. No. 33.)  Like Plaintiff's previous response in opposition, this Motion is one page long; it does not cite to any legal authority; and it does not directly respond to any of CYS Defendants' arguments for dismissal.

On March 17, 2010, the third Motion to Dismiss (Doc. No. 36) was filed on behalf of Defendant Albert J. Lehmicke, M.D. (hereinafter "Dr. Lehmicke").  On the following day, March 18, 2010, the fourth Motion to Dismiss (Doc. No. 38) was filed on behalf of Defendant George B. Dawson.  Thereafter, Plaintiff filed a *pro se* motion requesting "that any further request for dismissal be denied" (Doc. No. 39), which the Court will presume was intended to be a response in opposition to the Dr. Lehmicke and Dawson Motions to Dismiss.  Once again, the Court notes that this response in opposition is one page long; it does not cite to any legal authority; and it does not directly respond to any of Dr. Lehmicke or Dawson's arguments for dismissal.

Finally, on May 4, 2010, the fifth Motion to Dismiss (Doc. No. 50) was filed on behalf of Defendant Gerard McShea, a Pennsylvania state trooper. Plaintiff did not file a response in opposition to this Motion and the time to file such a response has elapsed. However, the Court notes that Plaintiff's March 23, 2010 "Motion" (Doc. No. 39) appears to demonstrate Plaintiff's intent to request that any "pending next request" for dismissal be denied. Thus, the Court will infer that Plaintiff opposes Defendant McShea's Motion to Dismiss.

For the reasons that follow, the Court will grant the Motions to Dismiss (Doc. Nos. 21, 28, 36, 38, and 50) and dismiss all claims against all moving Defendants.

## II. PROCEDURAL HISTORY

On August 11, 2009, Plaintiff, filed a *pro se* civil rights complaint (Doc. No. 1) against numerous defendants including Delaware County CYS, employees of CYS, various law enforcement officials, and several judicial officers. In the following months, prior to serving any Defendants, Plaintiff filed several additional documents with the Court, styled as Amendments and/or Exhibits to the Complaint, which added or replaced various plaintiffs and defendants in the caption of each submission and asserted new allegations. (See Doc. Nos. 2, 3, 5, and 7.) On December 21, 2009, due to the nonconforming and confusing nature of Plaintiff's numerous filings, the Court ordered Plaintiff to file a complete amended complaint in accordance with the Federal Rules of Civil Procedure and informed Plaintiff that each Defendant must be served with a copy of this filing. (Doc. No. 9.) On January 11, 2010, in response to the Court's Order, Plaintiff filed an Amended Complaint (Doc. No. 10) and Exhibits (Doc. No. 14) which will

hereinafter be referred to collectively as Plaintiff's "Amended Complaint."[3]

On February 19, 2010, the Court granted Plaintiff's Motion for voluntary dismissal of two Defendants: Lauren Lonsdale and Thomas Gilhool. (See Doc. Nos. 19 and 23.) Additionally, as noted at footnote two, *supra*, Defendant Green was voluntarily dismissed on April 13, 2010. (Doc. No. 46.) On March 8, 2010, CYS Defendants filed a Motion for Protective Order pursuant to Fed. R. Civ. P. 26(c) (Doc. No. 32) to stay discovery pending resolution of their Motion to Dismiss (Doc. No. 28). On March 31, 2010, the Court granted this Motion. (Doc. No. 40.)

At present, there are twenty-five (25) remaining defendants in this action. The five (5) Motions to Dismiss now pending before the Court were filed on behalf of these remaining Defendants and are now ripe for resolution.

## III.    FACTUAL BACKGROUND

The factual allegations contained in the Amended Complaint are liberally construed, as pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by attorneys. Erickson v. Pardus, 551 U.S. 89, 94 (2007); see also Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice"). Thus, if the Court:

---

[3] Plaintiff's Amended Complaint names three additional persons as Plaintiffs who were not listed in the initial complaint in this action: R.W., S.W., and V.W. However, these persons appear to be the minors who are the subjects of the state court child dependency proceedings giving rise to this action. Therefore, only their initials are used here pursuant to Local Rule 5.1.3. Under Fed. R. Civ. P. 17(c)(1), a representative may sue on behalf of a minor if such representative is a "general guardian." According to the exhibits attached to the Amended Complaint, some or all of the above-referenced minor persons are in the custody of CYS. Thus, it is not apparent that Plaintiff is presently a "general guardian" over R.W., S.W., and V.W. Moreover, as previously noted, an individual is entitled to represent himself *pro se*, but he may not act as an attorney on behalf of others in federal court. Lutz, 809 F. Supp. at 325; Gass v. N.J. Div. of Youth & Family Svs., No. 09-928, 2009 WL 2878456, *1 n.1 (D.N.J. Sept. 2, 2009); 28 U.S.C. § 1654. Therefore, to reiterate, this Opinion and Order shall refer only to Victor Walthour, Sr. as the Plaintiff in this action.

> [C]an reasonably read [the] pleadings to state a valid claim on
> which [Plaintiff] could prevail, it should do so despite failure to
> cite proper legal authority, confusion of legal theories, poor syntax
> and sentence construction, or [Plaintiff's] unfamiliarity with
> pleading requirements.

Wilberger v. Ziegler, No. 08-54, 2009 WL 734728, *3 (W.D. Pa. Mar. 19, 2009); see also Boag

v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam) (noting that pro se pleadings should be

construed liberally, however inartful they may be).  In light of this standard, Plaintiff's

allegations are discussed below.

The Amended Complaint is largely adrift in a sea of legal conclusions not anchored to

supporting factual statements.  However, the crux of Plaintiff's argument is that Defendants

"caused undue hardship upon the Walthour family" by conducting state court proceedings

leading to an unlawful "divorce without consent" and unlawful removal of Plaintiff's minor

children from his home in order to place them in the care of CYS.  (Amend. Compl. 1, 3-12.)

The underlying facts are apparent only through a review of the exhibits attached to the Amended

Complaint, primarily consisting of official documents from the Delaware County Department of

Human Services, the Delaware County Court of Common Pleas, and Delaware County CYS.[4]

According to these documents, on May 14, 2009, CYS received a referral from the high

school attended by Plaintiff's daughter (hereinafter referred to as "S.W.").  Through this referral,

CYS was informed that S.W. was beaten with an extension cord resulting in bruises to her arms

and legs.  (Amend. Compl. Ex. "Allegations of Dependency.")  CYS believed this beating was

inflicted by S.W.'s father, Plaintiff.  (Id.)  CYS reported that on May 18, 2009, S.W. was seen by

---

[4] The authenticity of these documents is not disputed by Defendants.

a pediatrician, Dr. Lehmicke,[5] who stated that the injuries were significant and rose to the level of child abuse. (Amend. Compl. Ex. "CPS Services Form CY 48-0695, Page 2.")

On May 29, 2009, Defendant Judge Coll issued a Protective Custody Order granting CYS temporary custody of S.W. and V.W., Plaintiff's daughter and son. (Amend. Compl. Ex. "Allegations of Dependency.") On June 30, 2009, after conducting a hearing, Defendant McNulty, in his role as court-appointed master, recommended to the Court of Common Pleas that protective custody and temporary legal and physical custody of V.W. remain with CYS. (Amend. Compl. Ex. "July 30, 2009 Order of David W. McNulty, Esquire, Master.") On August 12, 2009, a similar recommendation was made regarding both S.W. and V.W. (Amend. Compl. Ex. "Aug. 12, 2009 Order.")

On September 16, 2009, a subpoena was issued under the authority of Defendant Cronin, President Judge of the Court of Common Pleas of Delaware County, and signed by the Clerk of Court, which commanded Plaintiff to appear before a Judge of the Delaware County Juvenile Court for a CYS Court Hearing on November 4, 2009. (Amend. Compl. Ex. "Sept. 16, 2009 Ltr. from CYS" and "Sept. 16, 2009 Subpoenas.")

Following a hearing on December 22, 2009, Defendant Judge Bradley issued Orders authorizing CYS to sign all required consents for the medical care of V.W. and S.W. (Amend. Compl. Ex. "Dec. 23, 2009 Orders of James P. Bradley, Judge, Court of Common Pleas of Delaware County, Pennsylvania.") As of the date of this Opinion, the Court presumes that

---

[5] The Amended Complaint does not identify Defendant Dr. Lehmicke as the physician who reported the child abuse. However, Dr. Lehmicke's Motion to Dismiss clarifies that he was the child-abuse-reporting physician who testified about his observations of physical abuse upon Plaintiff's minor child. (Lehmicke Motion to Dismiss, ¶¶ 8-9.)

Plaintiff's children remain in CYS custody.

Plaintiff's Amended Complaint asserts constitutional claims under 42 U.S.C. § 1983 for violations of Plaintiff's rights under the Due Process Clause, the Privileges or Immunities Clause, the Equal Protection Clause, the Takings Clause, and the Confrontation Clause; and for unreasonable search and seizure and "[e]ngag[ing] in Insurrection or Rebellion, or [giving] aid or comfort to the enemies of the Constitution." (Amend. Compl. 3-13.) Plaintiff additionally claims that his right to counsel was violated, which the Court will interpret to be a state law claim under the Juvenile Act, 42 Pa. C.S.A. § 6337,[6] because the Sixth Amendment right to representation is limited to indigent defendants in criminal proceedings. Gideon v. Wainwright, 372 U.S. 335, 342-43 (1963). Finally, Plaintiff asserts a claim for violations of "The Children Act of 1989," which appears to be a British law and is therefore beyond the jurisdiction of this Court.[7] (Amend. Compl. 1.) The relief sought by Plaintiff consists of (1) the immediate return of his minor children, (2) removal of Defendants' decision-making authority, and (3) monetary damages.

## IV.    LEGAL STANDARD

Defendants have moved to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). Judicial Defendants have

---

[6] Section 6337 of the Juvenile Act states that in juvenile proceedings "a party is entitled to representation by legal counsel at all stages of any proceedings under this chapter and if he is without financial resources or otherwise unable to employ counsel, to have the court provide counsel for him." 42 Pa. C.S.A. § 6337. Parents in dependency proceedings are "parties" entitled to representation under Section 6337. In re N.B., 817 A.2d 530, 535 (Pa. Super. 2003).

[7] The jurisdiction of federal courts is limited to cases arising under the Constitution and laws of the United States. See U.S. Const. art. III, § 2, cl. 1.

also moved to dismiss Plaintiff's Amended Complaint for lack of subject-matter jurisdiction under Fed. R. Civ. P. 12(b)(1). The standards for dismissal under these distinct subsections of Rule 12 are quite different. Mortensen v. First Fed. Savings and Loan Ass'n., 549 F.2d 884, 891 (3d Cir. 1977).

### A. Standard Under Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

A motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) challenges a court's very power to hear the case. Id. As the party asserting jurisdiction, Plaintiff bears the burden of showing that his claims are properly before the Court. Id. In deciding a Rule 12(b)(1) motion, a court must first determine whether "the attack on its jurisdiction is a facial attack or a factual attack." Van Tassel v. Lawrence County Domestic Relations Section, 659 F. Supp.2d 672, 687 (W.D. Pa. 2009). A facial attack challenges the sufficiency of Plaintiff's pleadings. Id. When a defendant makes a facial attack, "a court must accept the allegations contained in the plaintiff's complaint as true." Id. Conversely, when a defendant makes a factual attack on the court's jurisdiction, "the court does not attach a presumption of truthfulness to the plaintiff's allegations, and the existence of disputed material facts does not preclude the court from deciding for itself the jurisdictional issues raised in the motion to dismiss." Id.

Judicial Defendants do not explicitly state whether their Rule 12(b)(1) challenge is facial or factual. However, Judicial Defendants' arguments relying upon the *Rooker-Feldman* doctrine demonstrate their intent to make a factual challenge to subject-matter jurisdiction. Thus, on the jurisdictional issues raised in the Motion to Dismiss filed by Judicial Defendants, the Court need not credit Plaintiff's allegations with a presumption of truthfulness.

**B.**      **Standard Under Rule 12(b)(6): Failure to State a Claim**

The motion to dismiss standard under Rule 12(b)(6) has been the subject of recent examination, culminating with the Supreme Court's Opinion in Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). After Iqbal it is clear that "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice" in defeating a Rule 12(b)(6) motion to dismiss. Id. at 1949; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007). Applying the principles of Iqbal, the Third Circuit in Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009) articulated a two part analysis that district courts in this Circuit must conduct in evaluating whether allegations in a complaint survive a 12(b)(6) motion to dismiss. See also Edwards v. A.H. Cornell & Son, Inc., No. 09-3198, 2010 WL 2521033, *2 (3d Cir. June 24, 2010). First, the factual and legal elements of a claim should be separated, meaning "a District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 F.3d at 210-11. Second, the Court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211. In other words, a complaint must do more than allege a plaintiff's entitlement to relief, it must "show" such an entitlement with its facts. Id. (citing Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008)). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to relief.'" Iqbal, 129 S Ct. at 1950; Jones v. ABN Amro Mortg. Group, Inc., 606 F.3d 119, 123 (3d Cir. 2010). This "plausibility" determination under step two of the analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 129 S Ct. at 1950.

## V.     DISCUSSION

Plaintiff has asserted one state law claim under 42 Pa. C.S.A. § 6337, for failure to provide him with an attorney during the CYS proceedings.  He has also stated numerous constitutional claims including violations of the Due Process Clause, the Privileges or Immunities Clause, the Equal Protection Clause, the Confrontation Clause, and the Takings Clause; and unreasonable search and seizure and "[e]ngag[ing] in Insurrection or Rebellion, or [giving] aid or comfort to the enemies of the Constitution."

Constitutional claims can arise under 42 U.S.C. § 1983, which authorizes private parties to enforce federal constitutional and statutory rights against persons acting under color of state law.  Section 1983 provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law.

Below, the Court will first address Plaintiff's failure to state certain constitutional claims as to any of the named Defendants.  Next, the Court will address Plaintiff's failure to sufficiently plead any allegations of wrongdoing as to certain named Defendants.  Then, the Court will proceed to address the arguments raised by each group of Defendants in their Motions to Dismiss.

### A.     Plaintiff Fails to State a Claim Under the Fifth and Sixth Amendments

At the outset, the Court will dismiss Plaintiff's claims under the Confrontation and Takings Clauses.  The Sixth Amendment's Confrontation Clause applies only to criminal prosecutions.  Dutton v. Evans, 400 U.S. 74, 97 n.4 (1970) (Harlan, J., concurring).  The

underlying state court proceedings at issue are all civil proceedings. Therefore, the Sixth Amendment rights asserted by Plaintiff do not apply.

The Fifth Amendment's Takings Clause applies to government taking of property without just compensation. Not surprisingly, the Court is unaware of any case law finding that children fall within the definition of property under the Takings Clause and the Court therefore has little trouble finding that children are not property. See generally U.S. v. Fazal-Ur-Raheman-Fazal, 355 F.3d 40, 55 (1st Cir. 2004) (finding, in the context of sentencing statutes, that children are not property). Accordingly, Plaintiff's Sixth Amendment and Fifth Amendment claims will be dismissed for failure to state a claim upon which relief may be granted.

**B.** **Plaintiff Fails to State Any Claims Upon Which Relief May Be Granted as to Defendants George B. Dawson, Gerard McShea, Linda Cartisano, John Whelan, Christine Fizzano Cannon, Thomas McGarrigle, Andy Lewis, Dorothy Klein, Beverly White, Becki Harris, Howard Gallagher, Michael Dignazio, Barbara Scarlata, Colleen Cox, and Mary Germond**

It is unclear from the Amended Complaint or the attached exhibits what role, if any, certain Defendants played in the underlying child dependency proceeding giving rise to Plaintiff's claims asserted in this federal action. Specifically, the Amended Complaint is devoid of any allegations involving Defendants Dawson, McShea, Cartisano, Whelan, Cannon, McGarrigle, Lewis, Klein, White, Harris, Gallagher, Dignazio, Scarlata, Cox, and Germond.

A Complaint must state facts sufficient to provide Defendants with adequate notice of their offending conduct so that they may "respond to and/or defend the claim." Pierce v. Montgomery County Opportunity Bd., 884 F. Supp. 965, 971 (E.D. Pa. 1995); see Fed. R. Civ. P. 8(a). Neither the Amended Complaint, nor the attached exhibits, make any allegations regarding these Defendants. In other words, there is nothing in the Amended Complaint that would put

these Defendants on notice of the facts and circumstances giving rise to any claims against them.

The names of Defendants Cartisano, Whelan, Cannon, McGarrigle, Lewis, Klein, and Germond appear only in the official letterhead of CYS stationary attached as exhibits to the Amended Complaint, while the names of Defendants Dawson, McShae, Gallagher, Dignazio, Scarlata, and Cox are nowhere to be found other than in the caption of the Amended Complaint. Beverly White's name only appears as the addressee in a letter from Plaintiff's attorney requesting that a hearing be rescheduled.  (See Amend. Compl. Ex. "Jul. 20, 2009 Letter from Barbara Jean Moleah, Esquire.")  Becki Harris' name only appears on a letter from Harris addressed to Plaintiff's wife informing her of visitation dates that had been scheduled by CYS. (See Amend. Compl. Ex. "Jan. 6, 2010 Letter from Becki Harris.")  Thus, Plaintiff has failed to provide any specific factual allegations regarding the involvement of any of the above-named Defendants in the events giving rise to this law suit.  This omission alone is a sufficient ground for dismissal of these Defendants.  Marvasi v. Shorty, 70 F.R.D. 14, 22-23 (E.D. Pa. 1976).

Accordingly, the Motions to Dismiss filed on behalf of Defendants George B. Dawson, Gerard McShea, Linda Cartisano, John Whelan, Christine Fizzano Cannon, Thomas McGarrigle, Andy Lewis, Dorothy Klein, Beverly White, Becky Harris, Howard Gallagher, Michael Dignazio, Barbara Scarlata, Colleen Cox, and Mary Germond will be granted and all claims against these Defendants will be dismissed.

> ### C.    Judicial Defendants' Motion to Dismiss
>
> #### 1.    Plaintiff Fails to State Any Claims Upon Which Relief Can Be Granted As To Judicial Defendants

Judicial Defendants' Motion to Dismiss argues that Plaintiff has failed to adequately

plead any cause of action. As noted above, in deciding a Rule 12(b)(6) Motion to Dismiss the Court must accept all well-pleaded facts as true and view the facts in the light most favorable to Plaintiff, but the Court need not credit bare assertions and legal conclusions. Iqbal, 129 S. Ct. at 1949. Federal Rule of Civil Procedure 8 requires that a complaint contain sufficient factual matter to state a claim for relief that is plausible on its face, i.e., upon review of the complaint, a court could draw the reasonable inference that the defendant is liable for the alleged misconduct. Fed. R. Civ. P. 8; Lopez v. Beard, 333 Fed. App'x 685, 687 (3d Cir. 2009) (*per curiam*).

The Amended Complaint simply lists a series of legal conclusions beneath the names of each Judicial Defendant. As to Defendant Coll, Plaintiff's Amended Complaint states:

Judge Michael F. X. Coll

May 29, 2009

I.    Assisted others in the Delaware County Justice System to cause Undue Hardship upon the Walthour Family.

(a) Performed a divorce without consent.
(b) Based decision on Racial bias or Discriminatory acts
(c) Based decision on Origin bias or Discriminatory acts
(d) Based decision on Sexual bias or Discriminatory acts
(e) Based decision on Religious bias or Discriminatory acts
(f) Made or Enforced law to Abridge Privilege and Immunity Clauses
(g) Denied Equal protection of the law
(h) Performed hearing without Accused
(i) Denied Counsel for Defense
(j) Engaged in insurrection or Rebellion, or gave aid or comfort to the enemies of the Constitution of the United States of America
(k) Assisted Unreasonable Search and Seizure

supported by Oath or Affirmation
(l) Assisted taken Private property for Public use
(m) Denied confronting of witness

(Amend. Compl. 3-4.) The format and paucity of these allegations are substantially similar, if

not identical, to those lodged against each Judicial Defendant. Such allegations are merely

threadbare conclusory statements which cannot suffice to defeat a Rule 12(b)(6) motion to

dismiss. Iqbal, 129 S. Ct. at 1949.

Moreover, the exhibits supplied by Plaintiff almost exclusively consist of official

documents from court proceedings or state agencies, none of which show any legal infirmities or

constitutional violations. To the contrary, the exhibits demonstrate the function of the state court

and social service departments in responding to reports of child abuse and conducting hearings,

investigations, and adjudicatory proceedings in response thereto. Thus, Plaintiff's exhibits do

nothing to advance his cause.

Although it is clear that Plaintiff vehemently believes his civil rights have been violated

by Judicial Defendants, he has failed to offer any factual allegations to support this assertion. To

reiterate, where the facts alleged "do not permit the court to infer more than the mere possibility

of misconduct, the complaint has alleged–but it has not 'shown'– 'that the pleader is entitled to

relief.'" Id. at 1950.

There are simply no factual allegations, even when viewed in the light most favorable to

Plaintiff, that support any plausible claim that Judicial Defendants took part in any unlawful

search or seizure of Plaintiff's person or property, denied him due process of law, denied him

equal protection under the law, abridged his privileges or immunities, engaged in insurrection, or

denied his right to counsel under 42 Pa. C.S.A. § 6337. Plaintiff's claims, consisting primarily

of bare legal conclusions, are precisely the types of claims prohibited under the pleading standard

set forth in Twombly and Iqbal.

## 2. All Claims Against Judicial Defendants Are Barred By Sovereign And Judicial Immunity

The Court additionally finds that Plaintiff's claims as to the Judicial Defendants are

barred by sovereign and judicial immunity.[8]

### a. Sovereign Immunity

Although state officials, such as Judicial Defendants, are literally "persons," a Section

1983 action for money damages against state officials in their official capacity is, in reality, a

claim against the state itself.  Will v. Mich. Dep't of State Police, 491 U.S. 58,  64 (1989).  A

state is not a "person" within the meaning of Section 1983.  Id. at 64.  As the Supreme Court

explained in Will:

> Section 1983 provides a federal forum to remedy many deprivations
> of civil liberties, but it does not provide a federal forum for litigants
> who seek a remedy against a State for alleged deprivations of civil
> liberties....  Congress, in passing § 1983, had no intention to disturb
> the States' Eleventh Amendment immunity.

Id. at 66.  In other words, a claim against Judicial Defendants in their official capacity is simply a

claim against the state, and a state cannot be sued under Section 1983 for money damages.  See

Nelson v. Dauphin County Public Defender, No. 09-4466, 2010 WL 2075874, *1 (3d Cir. May 24,

2010) (per curiam) ("[N]o claim can be made against the Commonwealth of Pennsylvania, because

it is not a 'person' subject to suit under section 1983."); Haybarger v. Lawrence County Adult

---

[8] Plaintiff has not indicated whether Judicial Defendants are sued in their official or personal capacity.  However, construing Plaintiff's pro se pleadings liberally, the Court will presume that he intended to sue the Judicial Defendants in both their official and personal capacity.

Probation and Parole, 551 F.3d 193, 195-96 (3d Cir. 2008). Therefore, Plaintiff's official capacity claims against Judicial Defendants will be dismissed.

### b. Judicial Immunity

Judicial Defendants are also entitled to judicial immunity for all claims against them in their personal capacity. A judicial officer, in the performance of his duties as a judge, is absolutely immune from suit in his personal capacity and is not liable for his judicial acts. Azbuko v. Royal, 443 F.3d 302, 303 (3d Cir. 2006) (*per curiam*). A judge will not be deprived of his judicial immunity even if his actions were in error, or in excess of his authority, or were taken with malice. Stump v. Sparkman, 435 U.S. 349, 356-57 (1978); Azbuko, 443 F.3d at 303. "[O]nly when he has acted in the 'clear absence of all jurisdiction'" will a judge be subject to liability. Stump, 435 U.S. at 356-57.

As noted above, the allegations made against Judicial Defendants are largely unclear and conclusory. It appears that Plaintiff simply disagrees with the judicial acts and decisions of the Judicial Defendants who may have presided over some aspects of the state court child dependency proceedings. However, without more, Plaintiff's allegations do not demonstrate that Judicial Defendants took any action against Plaintiff in the clear absence of all jurisdiction. Stump, 435 U.S. at 356-57. Accordingly, Judicial Defendants are entitled to judicial immunity for all claims against them in their personal capacity.

### 3. The *Rooker-Feldman* Doctrine Bars Plaintiff's Claim For Injunctive Relief

Finally, Judicial Defendants argue that Plaintiff's case should be dismissed for lack of subject matter jurisdiction, pursuant to Fed. R. of Civ. P. 12(b)(1). Specifically, Judicial

Defendants urge that Plaintiff's suit is barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine bars "lower federal courts from exercising jurisdiction over a case that is the functional equivalent of an appeal from a state court judgment." Marran v. Marran, 376 F.3d 143, 149 (3d Cir. 2004). In other words, federal courts lack jurisdiction to review state court judgments where the relief sought is appellate review. District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923). The Third Circuit has explained that a case is the functional equivalent of an appeal from a state court judgment in two instances: (1) when the Court is asked to decide an issue that was already fully litigated in a state court, or (2) when the Court is asked to decide an issue that is inextricably intertwined with the state court adjudication. Marran, 376 F.3d at 149.

Here, the underlying state court proceedings dealt with child custody determinations, while this federal suit was brought to vindicate Plaintiff's constitutional rights. Therefore, this is not a case where precisely the same issues were litigated in state court. However, with respect to the injunctive relief sought, this is a case in which Plaintiff asks this Court to decide issues inextricably intertwined with the state court adjudication.

To determine whether a claim is inextricably intertwined with a prior state court decision, the Court "looks at 'the questions of state law that the state court was required to reach in order to render its decision.'" Id. at 150 (quoting Desi's Pizza v. City of Wilkes-Barre, 321 F.3d 411, 421 (3d Cir. 2003)). If federal relief can only be predicated based upon a determination that the state court judgment was erroneous, or if federal relief would render the state judgment ineffectual, then the claim is inextricably intertwined with the state court adjudication. Id.

In Marran, a case factually similar to the case at hand, the plaintiff sought injunctive relief

18

which in effect would have required the federal court to find that a state court custody determination was erroneous. 376 F.3d at 153. The Third Circuit found that such relief "is barred under *Rooker-Feldman*, because it is an indirect attack on the custody determination already adjudicated in state court." Id. Notably, with regard to the claims against the county child and youth services department in that case, the Third Circuit's application of the *Rooker-Feldman* doctrine only applied to the plaintiff's claims for injunctive relief. The plaintiff's Section 1983 due process claims for monetary damages were not barred by *Rooker-Feldman*, according to the Third Circuit, because a finding that plaintiff's civil rights had been violated would not necessarily have required a finding that the state court erred. Id.[9]

Likewise, here, Plaintiff seeks injunctive relief to have his minor children returned immediately. Such relief would require this Court to find that the state court child custody determination regarding Plaintiff's children is null and void. However, as explained above, the *Rooker-Feldman* doctrine bars this type of relief. Therefore, Plaintiff's request for injunctive relief will be denied as the Court lacks subject matter jurisdiction over this claim.

For all of the reasons noted above, Judicial Defendants' Motion to Dismiss will be granted and all of Plaintiff's claims as to Judicial Defendants will be dismissed.

**D.     CYS Defendants' Motion to Dismiss**

**1.     Plaintiff Has Failed To State A Claim For Municipal Liability As To The Delaware County Department Of Children And Youth Services**

First, the Court notes that departments of a county, e.g., the Delaware County Department of Children and Youth Services, do not have a separate corporate existence from the county and

---

[9] For the reasons stated in this Opinion, however, the award of money damages here is not appropriate given the dismissal of all claims brought by Plaintiff.

are therefore not entities capable of being sued under Section 1983. Padilla v. Twp. of Cherry Hill, 110 Fed. App'x 272, 278 (3d Cir. 2004). In other words, the proper Defendant in this case would be Delaware County, rather than its Department of Children and Youth Services. However, even had Plaintiff correctly named Delaware County as a Defendant, CYS Defendants are correct in noting that Plaintiff has failed to state a claim for municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Under Monell, "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." Id. Plaintiff cannot rely on a *respondeat superior* theory to impose liability on a municipality. Brown v. City of Pittsburgh, 586 F.3d 263, 292 (3d Cir. 2009). Rather, Plaintiff must allege that the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury." Monell, 436 U.S. at 694. In other words, "Plaintiff must identify the challenged policy, attribute it to the city itself, and show a causal link between execution of the policy and the injury suffered." Losch v. Borough of Parkesberg, 736 F.2d 903, 910 (3d Cir. 1984).

Here, Plaintiff has not identified a municipal policy or custom, nor demonstrated a causal link between a policy or custom and his alleged injury. Accordingly, even had Plaintiff properly named the County of Delaware as a Defendant, he failed to state a claim for municipal liability against the County. Therefore, the CYS Defendants' Motion to Dismiss will be granted as to the Delaware County Department of Children and Youth Services, and all claims against this Defendant will be dismissed.

### 2. Plaintiff Has Failed To State Official Capacity Claims As To The Individual CYS Defendants

Plaintiff's failure to state a claim for municipal liability likewise requires the dismissal of any official capacity claims against the individual CYS Defendants.[10]  A claim against a person in his official capacity is equivalent to a claim against the municipality that employs him. Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  In other words, an official capacity suit is simply another way of pleading an action against the entity of which the official is an agent. Cunningham v. North Versailles Twp., No. 09-1314, 2010 WL 391380, *14 (W.D. Pa. Jan. 27, 2010).  Because, as noted above, Plaintiff has failed to adequately allege a municipal liability claim, his official capacity claims against the individual CYS Defendants must also be dismissed. Id. (holding that because "Plaintiff cannot maintain a claim against Defendant Township, as he has failed to adequately allege municipal liability, his official capacity claims against Defendant Officers must also be dismissed.").

### 3. CYS Caseworkers and Supervisors are Absolutely Immune from Suit[11]

Plaintiff has asserted claims against several CYS caseworkers and caseworker supervisors, including: Patricia McGettigan, Colleen Cox, Tamika Clarke, Becki Harris, and Lauren Lonsdale.  These Defendants are entitled to absolute immunity for all personal capacity

---

[10] Although Plaintiff has not indicated whether the individual CYS Defendants are sued in their official or personal capacity, construing Plaintiff's *pro se* pleadings liberally, the Court will presume that Plaintiff intended to sue these Defendants in both their official and personal capacity.

[11] As noted above, the Court has already dismissed all claims against caseworkers Colleen Cox and Becki Harris due to Plaintiff's failure to provide any factual allegations regarding their involvement in the activities giving rise to this lawsuit.

claims lodged by Plaintiff.  See Ernst v. Child and Youth Servs. of Chester County, 108 F.3d 486, 493 (3d Cir. 1997).  In Ernst, the Third Circuit, confronted with an issue of first impression in this Circuit, held that the CYS defendants in that case were entitled to absolute immunity for "their actions in petitioning and in formulating and making recommendations to the state court because those actions are analogous to functions performed by state prosecutors."  108 F.3d at 493.  The Third Circuit explained that CYS caseworkers' actions in preparing for, initiating, and prosecuting dependency proceedings are important actions taken on behalf of the state.  Like criminal prosecutors, caseworkers' decisions must often be made swiftly and based upon "incomplete information as to whether to commence investigations and initiate proceedings against parents who may have abused their children."  Id. at 496.

In addition, the Ernst decision articulated the public policy considerations which support the granting of absolute immunity to CYS caseworkers:

> Like a prosecutor, a child welfare worker must exercise independent judgment in deciding whether or not to bring a child dependency proceeding, and such judgment would likely be compromised if the worker faced the threat of personal liability for every mistake in judgment.  Certainly, we want our child welfare workers to exercise care in deciding to interfere in parent-child relationships.  But we do not want them to be so overly cautious, out of fear of personal liability, that they fail to intervene in situations in which children are in danger.

Id.  Thus, the Third Circuit recognized that in the absence of absolute immunity, CYS caseworkers would likely face substantially more suits in retaliation for the initiation of child dependency proceedings than criminal prosecutors face.  This is so because parents are likely to be "even more resentful of state interference in the usually sacrosanct parent-child relationship than are defendants of criminal prosecution."  Id. at 496-97.

Finally, the Third Circuit emphasized that there are safeguards built into the child-dependency process that protect the public from unconstitutional conduct by CYS caseworkers. Id. at 497. Notably, the judicial process itself provides significant protection in that caseworkers must use state court child dependency proceedings in order to seek an adjudication of dependency. Id. In these proceedings, a neutral and detached judge must make a determination applying the "best interests of the child" standard. Id. The court's decision is then subject to appellate review. Id.

Turning now to Plaintiff's Amended Complaint, Plaintiff alleges that Defendant Clarke, the primary caseworker assigned to the dependency proceedings for Plaintiff's children, and Patricia McGettigan, a CYS caseworker supervisor, violated Plaintiff's "parental rights" in assisting with the dependency proceedings. (Doc. No. 14, Exhibits to Amend. Compl., pp. 13-15.) Plaintiff alleges that these caseworkers made false statements to the judge and initiated the proceedings surreptitiously.[12] (Id. at pp. 13-14.)

Like the plaintiff in Ernst, Plaintiff's claims against the CYS caseworkers here concern actions taken by the caseworkers "in connection with the formulation and presentation of recommendations to the state court regarding [his children's] dependency status and disposition."

_____

[12] Although Plaintiff's pleadings are difficult to understand, it appears that he contends that the CYS caseworkers used his wife's maiden name in an effort to somehow hide the proceedings from Plaintiff or to exclude Plaintiff from the proceedings. However, Plaintiff's own filings and exhibits contradict this argument, because he admittedly attended the proceedings, he had an attorney corresponding with CYS during the proceedings, and although letters from CYS may have been addressed to Plaintiff's wife using her maiden name, they were mailed to Plaintiff's residence. Additionally, Plaintiff has asserted that he is or was the legal guardian of his incapacitated wife. Therefore, he would seemingly have had legal access to any correspondence that CYS may have addressed to his wife, regardless whether they used her married or maiden name.

108 F.3d at 497. Therefore, the CYS caseworkers are entitled to absolute immunity for the conduct challenged by Plaintiff.[13]

### E.       Defendant Dr. Lehmicke Is Entitled To Absolute Witness Immunity

The Amended Complaint does not identify Dr. Lehmicke or state any facts which would put Dr. Lehmicke on notice of the claims asserted against him. His name only appears in the caption of the Amended Complaint (improperly captioned as "Dr. Lemke"). However, Plaintiff's initial Complaint/Exhibits (specifically, Doc. No. 3 at p. 2) show that Dr. Lehmicke is a physician who testified during the state court child dependency proceedings as to the nature and severity of the injuries Plaintiff allegedly inflicted upon his daughter – which apparently was the catalyst for the child dependency proceedings.[14] Therefore, it appears that the only allegation against Dr. Lehmicke is that he testified during the dependency proceedings. However, "[w]itnesses, including public officials and private citizens, are immune from civil damages based upon their testimony" during court proceedings. Hughes v. Long, 242 F.3d 121, 125 (3d

---

[13] Actions taken by CYS caseworkers in the context of investigative or administrative duties are only entitled to qualified immunity, not absolute immunity. Ernst, 108 F.3d at 497 n.7. As repeatedly noted by the Court, Plaintiff's allegations are often difficult to surmise. If Plaintiff intended to challenge the investigative or administrative actions of the CYS caseworkers, it is entirely unclear from the pleadings. Therefore, the Court makes no determination regarding the CYS caseworker's entitlement to qualified immunity.

[14] Typically, an amended complaint supersedes the original complaint, and any prior amendments, such that the prior complaint(s) no longer bear any importance to the case. See 3 Moore's Federal Practice § 15.17[3] (3d ed. 2009). Although this Court Ordered Plaintiff to file one complete amended complaint, i.e., the Amended Complaint at Doc. No. 10, the Court will acknowledge the allegation regarding Dr. Lehmicke contained in the initial Complaint/Exhibits because of the liberal pleading standards that apply to pro se plaintiffs. Additionally, the Court notes that Dr. Lehmicke's Motion to Dismiss cites to this paragraph of Plaintiff's initial Complaint/Exhibits, thereby directly responding to this allegation. (Dr. Lehmicke Motion to Dismiss, ¶ 8.)

Cir. 2001). This immunity is essential to allow "functionaries in the judicial system the ability to perform their tasks and apply their discretion without the threat of retaliatory § 1983 litigation." Id. Consequently, Dr. Lehmicke is entitled to absolute witness immunity and all claims against him will be dismissed.

## VI. CONCLUSION

Plaintiff has submitted numerous filings in this case and has asserted unsubstantiated, conclusory allegations against dozens of Delaware County public servants and officers of the court who play a vital role in the serious business of detecting, investigating, and prosecuting allegations of child abuse. His pleadings are woefully insufficient and fail to state any claims upon which relief may be granted.

For all of the foregoing reasons, Defendants' Motions to Dismiss will be granted and Plaintiff's Amended Complaint will be dismissed as to all Defendants as well. An appropriate Order follows.